Justice HOENS,
concurring in part and dissenting in part.
I concur in the conclusions expressed by my colleagues in their majority opinion, and in the reasoning that supports those conclusions, in all respects except for the majority’s analysis and resolution of the dispute about the appropriate remedy.
More particularly, I agree that the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -20, applies to this transaction, ante at 186-88, 78 A.3d at 538-39. That is to say, I agree that the complicated transaction that defendant created and utilized in his dealings with plaintiffs constituted a “commercial practice ... in connection with the sale or advertisement of any merchandise[,]” N.J.S.A. 56:8-2; see ante at 187-88, 78 A.3d at 538-39, as the Legislature intended that phrase to be construed and as we have interpreted it, see Lemelledo v. Beneficial Mgmt. Corp., 150 N.J. 255, 265, 696 A.2d 546 (1997) (concluding that CFA terms are broad enough to include sale of credit and insurance); accord Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 271, 390 A.2d 566 (1978).
I agree, therefore, with the majority’s conclusion that the transaction, in spite of its “unique combination of terms[,]” ante at 187, 78 A.3d at 539, did not escape the broad remedial reach of the CFA because it was, at its core, an offer to sell foreclosure rescue *202 services that fell within the definitions of both “sale” and “merchandise[,]” ante at 187-88, 78 A.3d at 539 (citing N.J.S.A. 56:8-1(c), (e)).
Moreover, I agree that the transaction was an unconscionable commercial practice for the reasons expressed by the majority, see ante at 189-90, 78 A.3d at 540, which are fully in accord with the statutory language and our case law, see, e.g., Real v. Radir Wheels, Inc., 198 N.J. 511, 524, 527, 969 A.2d 1069 (2009) (concluding defendant “intentionally had engaged in unconscionable commercial practices in connection with the advertisement and sale of merchandise” by falsely representing condition of car); Strawn v. Canuso, 140 N.J. 43, 60-61, 657 A.2d 420 (1995) (describing affirmative acts and omissions that constitute unconscionable actions for CFA purposes).
I dissent, however, because the majority’s analysis of the appropriate remedy in this matter is not faithful to the plain language of the CFA. As I see it, the majority, like the trial court, rests its analysis of the appropriate remedy on a fundamentally flawed understanding of the CFA, through which my colleagues have confused the threshold concept of “ascertainable loss[,]” see N.J.S.A. 56:8-19 (authorizing “[a]ny person who suffers any ascertainable loss” to “bring an action” in appropriate court), with the separate concept of “damages sustained,” that must be trebled by the terms of the statute, ibid. As a result of that misunderstanding, my colleagues in the majority have embraced the trial court’s creation of a fictional loss that served solely as the basis for awarding treble damages in addition to the award of complete equitable relief. Instead, I would apply the plain language of the CFA, leading me to affirm the Appellate Division’s well-grounded rejection of the trial court’s remedy.
Perhaps because both the terms “ascertainable loss” and “damages sustained” are found in the same provision of the CFA, see ibid., the majority has permitted one to bleed into the other, but there is nothing in the structure of the CFA or in this Court’s long history of advancing its purposes that supports that approach. On *203 the contrary, both the traditional plain language approach to statutory construction, and this Court’s general understanding of the CFA’s purposes as revealed in our relevant precedents, demonstrates the fallacy of the majority’s reasoning and its result.
I do not intend to suggest that the majority is in error in its numerous citations to decisions of this Court in which the two terms have been used interchangeably, see ante at 192-94, 78 A.3d at 541 — 42, for it plainly has. Nor do I intend to argue that, in many, if not most, cases the two will be identical, because, as the majority points out, they often are. See id. at 193-94, 78 A.3d at 542. But this will not always be so, and in no decision before today’s has this Court used the term “ascertainable loss” when instead called upon to address squarely what the Legislature meant when it instead used the term “damages sustained[.]” See N.J.S.A. 56:8-19. In my view, the majority’s error lies in conflating those two entirely separate and distinct statutory concepts when the context of the dispute demands precision. The Legislature’s choice of words makes plain that my colleagues have missed the opportunity to erase the confusion that has crept into our jurisprudence and now will continue to bedevil our courts in what should be a subject of complete clarity. I therefore respectfully dissent.
I.
The principles of statutory construction that guide us in our interpretation of language that the Legislature has chosen to use are so familiar, see, e.g., Bosland v. Wamock Dodge, Inc., 197 N.J. 543, 553-54, 964 A.2d 741 (2009), that they need not be recited here at length. Rather, it is sufficient to reiterate that when the words chosen are plain, we read them “in accordance with those meanings.” In re Lead Paint Litig., 191 N.J. 405, 430, 924 A.2d 484 (2007) (citation omitted).
In the case of the particular words that the Legislature has used in the CFA, there is simply no lack of clarity. I begin with the language of the CFA that forms the basis for the remedy and *204 is the focal point of my disagreement with my colleagues in the majority. That section, in its entirety, provides:
Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, including those brought by the Attorney General, the court shall also award reasonable attorneys’ fees, filing fees and reasonable costs of suit.
[N.J.S.A. 56:8-19.]
Stripped to its essence, the provision has three sentences, each of which addresses a separate concept.
The first sentence provides that “[a]ny person who suffers any ascertainable loss [of a specific kind and resulting from a prohibited act] ... may bring an action[.]” Ibid.
The second sentence, which follows that authorization to “bring an action[,]” describes the potential remedy, including trebling, by providing that “the court shall ... award threefold the damages sustained[.]” Ibid. Significantly, the second sentence recognizes the availability of “other appropriate legal or equitable reliefs’ but ties trebling to “the damages sustained[.]” Ibid. More significant for this appeal, the sentence does not refer back to the concept of “ascertainable loss[.]” Ibid.
The third sentence, which is not germane to this appeal, requires that reasonable attorneys’ fees be awarded, regardless of whether the relief that plaintiff achieves is legal or equitable in nature. Ibid.
In short, the language of the statute uses the term “ascertainable loss” only in its description of the right to commence litigation. By linking that phrase to the commencement of litigation, the Legislature made plain its intent that it be merely a threshold. This Court, in the seminal decision construing the meaning and intent of the phrase, addressed it in that context, considering the proofs needed to demonstrate that a particular plaintiff has sufficient evidence to proceed past a dispositive motion. See Thiede *205 mann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248-49, 872 A.2d 783 (2005). After acknowledging that the phrase “ascertainable loss” was not defined in the statute, id. at 248, 872 A.2d 783 (citing Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 13, 860 A.2d 435 (2004)), we looked outside of the CFA for guidance as to the meaning of the phrase, ibid, (citing Webster’s Third New International Dictionary 126 (1981)).
Regardless of where it is that we looked for help in understanding the meaning of the phrase, the role it played in the statutory scheme was not in dispute. We explained that it is “the legislative language describing the requisite loss for private standing under the CFA ... from which a factfinder could find or infer that the plaintiff suffered an actual loss.” Ibid.; accord Weinberg v. Sprint Corp., 173 N.J. 233, 251, 801 A.2d 281 (2002) (observing that “the plain language of the Act unmistakably makes a claim of ascertainable loss a prerequisite for a private cause of action”). We observed that the phrase served as, the threshold showing of a measurable loss that “will set the stage for establishing the measure of damages.” Thiedemann, supra, 183 N.J. at 248, 872 A.2d 783 (citing Furst, supra, 182 N.J. at 13, 860 A.2d 435). That reading and that interpretation of the phrase is faithful to the plain language of the CFA and it is consistent with the role of ascertainable loss as a threshold showing.
Moreover, that interpretation is faithful to our analysis of the CFA’s historical development, because it recognizes that the phrase was added in conjunction with the expansion of the CFA to create a private right of action. Id. at 245-47, 872 A.2d 783 (reciting history; describing role of ascertainable loss as part of prima facie proofs in private claims). In that context, the threshold of ascertainable loss defines what the CFA requires of private plaintiffs and stands in contrast to the claims that, in accordance with the CFA’s original structure, could be brought by the Attorney General. See Bosland, supra, 197 N.J. at 554-55, 964 A.2d 741 (reviewing history of CFA and expansion to permit private rights of action); Thiedemann, supra, 183 N.J. at 246, 872 A.2d *206 783 (citing Meshinsky v. Nichols Yacht Sales, Inc., 110 N.J. 464, 472-73, 541 A.2d 1063 (1988)).
Ascertainable loss, however, has nothing to do with a CFA plaintiffs eventual recovery. Instead, there are two phrases in the CFA that are relevant to this appeal and that relate to recovery, both of which are found in the second sentence of the provision on which this appeal turns. N.J.S.A. 56:8-19. First, the CFA permits plaintiff to recover “any ... appropriate legal or equitable relief[.]” Ibid. Second, the CFA refers to “the damages sustained” as being the basis for the required trebling. Ibid.
The phrases “legal ... relief’ and “damages sustained” are not unfamiliar concepts, but are ordinary references to compensatory damages that must be proven with the requisite certainty. See Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 375-76, 25 A.3d 221 (2011) (concluding that trial court erred in basing award of damages on “expert’s wholly speculative views”); Nappe v. Anschelewitz, Barr, Ansell & Bonello, 97 N.J. 37, 48, 477 A.2d 1224 (1984) (defining compensatory damages as being “designed to compensate a plaintiff for an actual injury or loss”); Lane v. Oil Delivery, Inc., 216 N.J.Super. 413, 420, 524 A.2d 405 (App.Div. 1987) (holding that although “[pjroof of damages need not be done with exactitude” damages must be proven “with such certainty as the nature of the case may permit” and may “not be a matter of speculation”).
By using the language of ordinary awards of damages in the second sentence of the statutory provision, the Legislature drew a clear distinction between the concept of ascertainable loss that serves as the threshold that a plaintiff must cross in order to file a CFA claim and damages sustained, which is the amount that is subject to trebling.
The former, which is to some extent permitted to be hypothetical, is simply not the same as the latter, which the statute requires to be proven as would any other award of damages. Indeed, we recognized this distinction as part of our explanation of the gatekeeping role that ascertainable loss is designed to play. See *207 Thiedemann, supra, 183 N.J. at 246, 872 A.2d 783 (explaining that amendment that created private cause of action “advanced the CFA’s purposes by compensating victims for actual losses, punishing wrongdoers through awards of treble damages” and providing for attorneys’ fees).
I do not suggest that the precedents from this Court or from our Appellate Division uniformly have been careful to draw the distinction between ascertainable loss and damages sustained and therefore to be trebled. Quite the contrary.
Our decisions have utilized the phrase “ascertainable loss[,]” correctly, both to describe or to evaluate the sufficiency of, and to articulate the elements of, a prima facie case. See, e.g., Bosland, supra, 197 N.J. at 557, 964 A.2d 741 (describing ascertainable loss as part of prima facie proofs); Weinberg, supra, 173 N.J. at 240, 801 A.2d 281 (affirming dismissal on motion for failure to demonstrate ascertainable loss); Meshinsky, supra, 110 N.J. at 475 n. 4, 541 A.2d 1063 (describing ascertainable loss in terms of what “plaintiff might have suffered”).
Although less frequently the focus of an appeal, our decisions also have used the phrase “damages sustained” and the phrase actual damages, correctly, to describe the proofs needed for a recovery and for trebling. See, e.g., Weinberg, 173 N.J. at 249, 801 A.2d 281 (observing that CFA permits recovery of “losses caused by violations of the Act”); Lettenmaier v. Lube Connection, Inc., 162 N.J. 134, 139, 741 A.2d 591 (1999) (commenting that one of three main purposes of CFA is “to compensate the victim for his or her actual loss”); Daaleman, supra, 77 N.J. at 271, 390 A.2d 566 (explaining that CFA “permits a person, who suffers a loss ... to sue and recover threefold the damages sustained”).
Nonetheless, there are other decisions in which the phrase “ascertainable loss” was used as a sort of short-hand reference to what, in reality, were actual damages, or was used in a less-than-precise manner in the discussion of general CFA concepts. See, e.g., Burst, supra, 182 N.J. at 14, 860 A.2d 435 (describing ascertainable loss in terms of benefit of bargain and replacement *208 value as measure of damages); Cox v. Sears Roebuck & Co., 138 N.J. 2, 23-24, 647 A.2d 454 (1994) (applying traditional contract damage principles to identify loss, but commenting that treble damages are awarded when “plaintiff proves ... an ascertainable loss”).
Regardless of whether one can point to language in any of this Court’s precedents through which the phrase “ascertainable loss” has been used in place of the more appropriate phrase “damages sustained[,J” this Court has not actually confused the two concepts analytically. Instead, as I see it, the question of what the statute demands as the basis on which there shall be trebling has not been squarely presented prior to this appeal. Indeed, it is the majority’s blurring of the two concepts, which the Legislature was careful to separate, in the first case in which the distinction is critical to the analysis, that threatens to inject a level of uncertainty that should be avoided.
Nor is there any doubt that the Court today has blurred concepts that the statute regards as distinct. As but one example, the majority observes, correctly, that “if the defendant or a non-party takes action to ensure that the plaintiff sustains no out-of-pocket loss or loss of value prior to litigation, then plaintiffs CFA claim may fail.” Ante at 194, 78 A.3d at 543 (citations omitted). But the majority then concludes that “[a] judicial remedy imposed at the conclusion of litigation, however, does not preclude a finding of ascertainable loss.” Id. at 195, 78 A.3d at 543. In making that statement, the majority leaps from “ascertainable loss” the theoretical concept central to the prima facie case, to evaluation of proofs, which the statute defines as “damages sustained” that should be trebled. And it is there that the majority, in my view, has erred.
II.
In this appeal, the focus is on the remedy to which plaintiffs are entitled, and more particularly, on whether plaintiffs have demonstrated a loss that the CFA requires be trebled.
*209 The trial court first crafted an equitable remedy, essentially rescinding the transaction and returning ownership of the residential property to plaintiffs. See ante at 179, 78 A.3d at 533. That remedy, however, did not merely restore plaintiffs to the status quo ante. Instead, it gave them their property, which in the meantime defendant had improved to remedy the outstanding Code violations, and which carried a reduced mortgage due to payments defendant had made. See id. at 175-78, 78 A.3d at 532-33. In an effort to determine how to calculate a sum so that treble damages could be awarded as well, however, the trial court looked to the concept of ascertainable loss and, essentially, resorted to an analysis that would have been appropriate had the court been deciding a threshold motion. See id. at 178-79, 78 A.3d at 533-34. Rather than engaging in that task, the trial court should have determined, as the statute requires, what damages plaintiffs had sustained. Had the trial court done that calculation, there would have been no damages to treble.
That is not because, as the majority suggests, I read the CFA to preclude an award of treble damages once the court has created an equitable remedy, see id. at 197-98, 78 A.3d at 544-45, for such an interpretation, as the majority points out, would indeed be “effectively rewrit[ing] the statutory language[,]” see ibid, at 197, 78 A.3d at 545. Nor is it because the trial court’s decision to grant equitable relief created the circumstance in which there were no damages sustained.
Instead, it is simply a reflection of the fact that plaintiffs failed to prove actual damages when they could have done so. Indeed, plaintiffs almost certainly could have proven damages, because they surely incurred costs in moving from the premises, renting living quarters elsewhere and the like, all of which would have qualified as damages sustained because of defendant’s CFA violation. Had plaintiffs proven those damages, the trial court would have been obliged to treble them, but plaintiffs did not offer such proofs.
*210 Plaintiffs’ failure of proofs should not be permitted to support the creation of entirely fictional damages, through the guise of calculating an ascertainable loss, merely for the purpose of awarding treble damages. That it is fictional is clear from the trial court’s calculation itself. The court designated the equity in the property as the ascertainable loss but then, recognizing that the rescission of the transaction restored to plaintiffs that equity and more, deducted sums invested by defendant to create an amount that the court then doubled rather than trebled.
I do not disagree that the statutory trebling is designed to be punitive; it plainly is. But in circumstances in which there are no actual damages sustained, and in which plaintiff is restored to a position superior to the one in which he or she began, using a concept like ascertainable loss to create a basis for trebling only results in a windfall. I see nothing in the statute’s language or history and nothing in this Court’s precedents that suggests that the CFA’s goals of punishment and deterrence require that result.
III.
As I read the plain language of the CFA, the concept of ascertainable loss is a threshold showing that plaintiffs must be able to identify to commence litigation and withstand a motion for summary judgment; it is nothing more. The concept of ascertainable loss is not part of the manner in which the damages sustained are proven and therefore not the basis on which treble damages are calculated.
As I see it, the Appellate Division’s analysis in this case, and in similar, published decisions, see Romano v. Galaxy Toyota, 399 N.J.Super. 470, 483-85, 945 A.2d 49 (App.Div.), certif. denied, 196 N.J. 344, 953 A.2d 763 (2008), is faithful to the plain language of the CFA and fully advance its strong remedial purposes. Therefore, the Appellate Division’s judgment in this matter should be affirmed by this Court.
We have not previously been called upon to address the difference between ascertainable loss and damages that are sustained *211 and therefore are trebled. By conflating the two separate and distinct concepts, the majority has missed an important opportunity to bring clarity to this statutory remedy. Instead, the majority’s approach invites trial courts to inject speculation into what should be routine calculations of damages and has encouraged them to search out ways to impose treble damages that far exceed the CFA’s punitive purpose.
I therefore respectfully dissent.
Judge CUFF (t/a) joins in this opinion.
For reversal in part/affirmance in part/reinstatement — Chief Justice RABNER and Justices LaVECCHIA, ALBIN, PATTERSON, and Judge RODRÍGUEZ (t/a) — 5
Opposed — Justice HOENS, and Judge CUFF (t/a) — 2